**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
  adam@gutridesafier.com
SETH A. SAFIER (State Bar No. 197427)
  seth@gutridesafier.com
ANTHONY PATEK (State Bar No. 228964)
  anthony@gutridesafier.com
MARIE A. MCCRARY (State Bar No. 262670)
  marie@gutridesafier.com
835 Douglass Street
San Francisco, California 94114
Telephone: (415) 529-4995
Facsimile:  (415) 449-6469

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| COGENT MEDICINE INC., <br><br> Plaintiff, <br><br> v. <br><br> ELSEVIER, INC., <br><br> Defendants. | Case No. 5:13-cv-04479-RMW <br><br> Case No. 5:13-cv-04486-RMW <br><br> **PLAINTIFF'S CONSOLIDATED SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** |
| COGENT MEDICINE INC., <br><br> Plaintiff, <br><br> v. <br><br> JOHN WILEY & SONS, INC., and JOHN WILEY & SONS, LTD. <br><br> Defendants. | |

## I. INTRODUCTION AND SUMMARY

Even after the U.S. Supreme Court's decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) ("*CLS Bank*"), Defendants' motions to dismiss[1] should be denied. *CLS Bank* reiterated that invalidation of claims on the ground they are directed to unpatentable subject matter is the *exception*, *not the rule*. *See id.* at 2354 ("[W]e tread carefully in construing this exclusionary principle lest it swallow all of patent law."). It should only be invoked when the claimed subject matter threatens to preempt "basic tools of science and technological work." *See id.* at 2354. Here, the claims are directed to one specific type of enhanced data interface, where medical information responsive to a submitted and stored search strategy is presented in a "data folder" with additional medical information preselected by a specialist as relevant to that search strategy. Dozens, and potentially hundreds, of other interfaces by which medical information may be presented exist in the prior art and on the internet. There is no risk of preempting anything, and there is no justification for invalidating any claim of the patent-in-suit under the abstract idea exception. Accordingly, this Court should deny Defendants' motions to dismiss.

### A. The Enhanced Interface of the '879 Patent is a Concrete Software Application, Not an Abstract Idea.

*CLS Bank* affirmed the two-step analysis of patentability announced previously in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S.Ct. 1289, 1296-97 (2012). The first question in any patent eligibility analysis, under *CLS Bank* or *Mayo*, is whether an abstract idea (or law of nature or natural phenomena) is claimed by the patent. *CLS Bank,* 132 S. Ct. at 2355 (citing *Mayo,* 132 S.Ct. 1289). If the claims are not directed to an abstract idea, there is no need to proceed further—the claims survive the patentability challenge. *CLS Bank* reaffirmed that the second prong of analysis occurs only after the first question is answered. *See CLS Bank*, 134 S.Ct. at 2355 ("***If*** [the claims are directed to one of the patent-ineligible concepts], we ***then***

---

[1] Defendants Elsevier, Inc. and John Wiley and Sons, Inc., and John Wiley and Sons, Ltd. (collectively, "Defendants") filed motions to dismiss that are substantively identical. Plaintiff files this consolidated response to the Defendants' supplemental briefs.

ask, "[w]hat else is there in the claims before us?") (emphasis added). The Supreme Court also noted that the mere fact that a court is able to reduce a claim to an abstract idea is not enough, because basically every claim can be reduced to an abstract idea if one first subtracts away all the concrete limitations in the claim. *Id*. at 2354 ("At some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'").

The claims of the '879 patent are not directed to any abstract idea—or at least no abstract idea as broad, basic, and widely known as those cited by the Defendants. Defendants have alleged several different "abstract ideas." In their original motions, Defendants characterized the "abstract idea" embodied within the claims as "providing users with a personal library interface containing medical literature." (Mot. at 11.) In their Reply and Supplemental Briefs, Defendants changed their characterization of the putative "abstract idea" to "organizing and presenting information to a user according to the user's preferences." (Reply at 3; Supp. Br. at 2.)

Neither of the abstract ideas alleged by Defendants is an accurate characterization of the methods and systems claimed by the '879 patent. As noted previously, the claims are directed to a specific user interface that supplies enhanced content to users via a "data folder" with medical information responsive to a "search strategy" and additional material that is preselected by a specialist. Defendants' proposed abstract ideas—"providing users with a personal library interface containing medical literature" and "organizing and presenting information to a user according to the user's preferences"—are both far broader than the claimed methods and systems, which are limited not only to providing medical information in data folders, but supplying medical information that is "preselected placed in said folder by a specialist" based on search strategies that were previously submitted by the user. *See* claim 1. Defendants entirely omit the "enhanced content" aspect of the claims in their argument. Because Defendants' proposed abstract ideas do not match even the non-computerized limitations of the claim, they cannot be abstract ideas preempted by the claims. The patent-in-suit simply does not embody the abstract ideas of "providing personalized library services" or "organizing data according to

- 2 -

5:13-cv-04479-RMW; Supp. Br. re Motion to Dismiss

personalized preferences."

The inapplicability of the abstract idea exception becomes even more apparent when one considers how narrowly one would have to describe the idea being applied in the claims of the patent-in-suit. The abstract idea exception is only supposed to be invoked when important "building blocks of human ingenuity" are at stake. In *CLS Bank*, the abstract idea at issue was "intermediated settlement." *CLS Bank*, 134 S.Ct. at 2355. This was apparent from the representative claims, which did nothing more than identify the steps that would be involved in an intermediated settlement (i.e., did not even contain limitations to a computer system). *Id*. at 2352, n.2. This was also true in *Bilski v. Kappos,* 561 U.S. 593, 130 S.Ct. 3218, 3223-24 (2010), where the broadest claims read onto *any* form of hedging, and in *Mayo*, 132 S.Ct. at 1295, where the claims read onto the use of measured thioguanine levels in setting dosages for further treatment.  Here, the claims read onto a specific computer interface for medical literature that requires data folders that store data responsive to search strategies and preselected medical information, and *only* that specific interface. So even if some abstract idea is embodied within the claims, it is not a fundamental building block of research that warrants exclusion from § 101.

Indeed, unlike the claim at issue in *CLS Bank*, the claims of the '879 patent raise no pre-emption concerns. Again, the claims of the '879 are directed only to specific computer interfaces and specific methods of providing those interfaces which utilize personalized data folders containing preselected medical information placed there by specialists. They do not cover interfaces in which results are not stored and presented in a data folder corresponding to a search strategy, nor do they preclude interfaces in which no additional, medical information "preselected by a specialist" is added to the folder.  They are not infringed by a myriad of alternate medical information interfaces such as those available through PubMed, epocrates.com, jamanetwork.com, and drugs.com.

Simply put, these claims do not preempt any of the "building blocks of human ingenuity" that the Court was concerned about protecting for the public domain in *CLS Bank*, *Bilski*, or

- 3 -

5:13-cv-04479-RMW; Supp. Br. re Motion to Dismiss

*Mayo*. Indeed, the prosecution history of the '879 patent contains multiple examples of prior art involving "personalized libraries" and "organizing data." *See, e.g.*, U.S. patent No.6,560,588 (Minter) (a patent to a "Method and Apparatus for Identifying Items of Information on Multi-User System" asserted against the '879 patent in a § 102(e) rejection that was ultimately withdrawn). Given this prior art, and the Patent Office's determination that the '879 patent contains new and useful contributions over the prior art, there is no reasonable apprehension that Plaintiff's patent preempts any scientific or technological progress, or otherwise "t[ies] up the use of underlying ideas." *CLS Bank*, 134 S.Ct. at 3254-55.

### B. The Enhanced Interface Described by Cogent's Patent is an Inventive Contribution to the Prior Art.

Even if the '879 patent did implicate the abstract ideas of "providing users with a personal library interface containing medical literature" or "organizing and presenting information to a user according to the user's preferences" (which it does not), it would still be patent-eligible because it describes an inventive contribution. *See CLS Bank*, 134 S.Ct. at 2355 (noting that integration of abstract idea into new, useful application can convey patent eligibility to an otherwise abstract claim). As noted above, the '879 patent does more than merely "providing a personalized library" or "organizing data according to preferences," because it adds to those concepts the novel contribution of an automated search and matching function that identifies and supplies new medical literature, based on common ground between prior search strategies and new medical literature selected by specialists. *See, e.g.*, claim 12 ("A system for providing data to a user, comprising: . . . user input and display means for accepting . . . a request to view medical information, and based on said request, selectively providing data set information in data folders . . . [including] information having been preselected and placed in said folder by a specialist. . . ").

This enhanced interface is different from, for example, merely running a saved search at periodic intervals, because it requires more than simply re-running a prior search. The enhanced interface provides related materials and concepts (i.e., preselected medical information) that are

- 4 -

not literally within the search terms utilized by the user. *Id.* Contrary to what Defendants assert, this automated identification of preselected literature was neither known or conventional at the time of the invention. It is certainly not covered by any of the broad, abstract ideas suggested by Defendants.

Because this aspect of the invention is an inventive contribution over the prior art, it merits patent protection under *CLS Bank*. Indeed, this differentiates the claims of the '879 patent from the claims at issue in *CLS Bank*. The *CLS Bank* claims added nothing at all beyond computerizing the pre-existing process of mediated settlement. It also distinguishes the claims of the '879 patent from those at issue in *DietGoal Innovations LLC v. Bravo Media LLC*, No. 13-cv-8391, 2014 WL 3582914 (S.D.N.Y. July 8, 2014). In *DietGoal*, the user interface did not provide any intelligent contribution to the user's experience. Rather, it only helped organize information provided by the users themselves (i.e., it accepted information input by the user then displayed that information back to the user). *See id.* at *2 (reciting claim 2 of the *DietGoal* patent as: "A system of computerized meal planning, comprising: a User Interface; a Database of food objects; and a Meal Builder, which displays on the User Interface meals from the Database, and wherein a user can change content of said meals and view the resulting meals' impact on customized eating goals."). This is a critical distinction. It places the *DietGoal* patent squarely within the bounds of a process which can be done by a person using pen and paper, but is merely sped up by a computer. In contrast, the claims of Cogent's patent introduce an aspect of artificial intelligence, and the automation of generating previously unrecognized connections between one person's research interests and other people's research.

### C. Conclusion

Because the '879 patent does not claim an abstract idea, does not preempt the abstract ideas of "personalized libraries" or "organization of data," and contains claim limitations which are inventive contributions, the patent is eligible under section 101 and Defendants' motions should be denied.

| | |
|---|---|
| | Respectfully submitted, |
| Dated: August 18, 2013 | **GUTRIDE SAFIER LLP** |
| | */s/ Anthony J. Patek          /*<br>Adam J. Gutride, Esq.<br>Seth A. Safier, Esq.<br>Anthony Patek, Esq.<br>Marie A. McCrary, Esq.<br>835 Douglass Street<br>San Francisco, California 94114<br>Telephone: (415) 529-4995<br>Facsimile: (415) 449-6469 |